IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JAMES ERNEST DUFF, II                                              PLAINTIFF

v.                    Civil No. 4:16-CV-04095 and 4:16-cv-04104

CORPORAL GRIFFIE, NURSE S. KING,                                  DEFENDANTS
LIEUTENANT GOLDEN ADAMS,
ACTING WARDEN MOORE, SHERIFF
RON STOVALL, GRIEVANCE
COORDINATOR A. LANDRETH

**ORDER**

Plaintiff proceeds in this matter *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983. Currently before the Court is a Motion for Summary Judgment filed by Defendant Nurse S. King ECF No. 38. Also before the Court is a Motion for Summary Judgment filed by Defendants Lieutenant Golden Adams, Acting Warden Moore, Grievance Coordinator A. Landreth, Corporal Griffie, and Sheriff Ron Stovall (collectively "Miller County Defendants").[1] ECF No. 42. Plaintiff has filed a response in opposition to the motions. The Court finds this matter ripe for its consideration. For the following reasons, Defendants' motions are granted.

**I. BACKGROUND**

On October 7, 2016, Plaintiff filed his first Complaint in Case No. 16-CV-04095. ECF No. 1. Plaintiff filed a Complaint on October 28, 2016, alleging similar facts. *See* Complaint, *Duff v. King et al*, No. 4:16-cv-04104 (W.D. Ark. Oct. 28, 2016), ECF No. 1. On November 3, 2016, the Court entered an Order consolidating the two cases, making 4:16-CV-04095 the lead case. ECF No. 10.

---

[1] Plaintiff did not provide full names for all of the Defendants, referring to them by their position at the MCDC during the relevant time frame.

Plaintiff alleges his constitutional rights were violated by the denial of medical care, by retaliation for filing grievances, by failure to protect, and by the use of excessive force against him when he was incarcerated as a pretrial detainee in the Miller County Detention Center (MCDC). Defendants held the following positions at the times alleged in Plaintiff's Complaint: King was a nurse employed by Southern Health Partners, Inc., which is contracted to provide medical care to inmates at the MCDC; Adams was a Lieutenant at the MCDC; Moore was the Acting Warden of the MCDC; Landreth was the Grievance Coordinator at the MCDC; Griffie was a Corporal at the MCDC; and Stovall was the elected Sheriff of Miller County, Arkansas.

### A. Claims from Complaint in 4:16-cv-04095

**Claim One:** Plaintiff's first claim alleges that Defendants Griffie, King, Adams and Moore retaliated against him. ECF No. 1 at 4. Specifically, Plaintiff alleges that on September 4, 2016, Griffie placed him in administrative segregation without a hearing, wrote a disciplinary charge against him, and punished him for using the grievance process to procure medical care. *Id*. Plaintiff alleges that King acted in collusion with Griffie because he opened and read the grievance Plaintiff had written, which accused King of systematically denying him medical treatment "for the purpose of increasing profits." *Id.* at 5. In support of his official capacity claim for these allegations, Plaintiff alleges the following:

> It is customary at this facility for staffing to place person in Ad Seg without formal notification and/or hearings to determine actual guilt, etc. It is also common for staffing to work in unison to harass persons incarcerated, also to deny them certain privileges and freedoms for the purpose of self enjoyment.

*Id.* at 5.

Plaintiff alleges that Adams "turn[ed] a blind eye to these activities" and "fail[ed] to hinder such activities by his subordinates." *Id*. at 6. Plaintiff further alleges that Adams was aware of these activities because he regularly attended disciplinary hearings and answered grievances. *Id.*.

In addition, Plaintiff alleges that Moore "allow[ed] staffing to act without constraint despite being in a highly placed administrative position." *Id.* at 7. Plaintiff proceeds against Griffie, King, and Adams for Claim One in both their official and individual capacities. *Id.* at 5-6. Plaintiff proceeds against Moore for Claim One in his official capacity only. *Id.* at 7.

**Claim Two**: Plaintiff alleges a denial of medical care for the months of June, July, and August 2016 by King, Griffie, Adams, Moore and Stovall. *Id.* at 7. Plaintiff proceeds against these Defendants for Claim Two in both their official and individual capacities. Plaintiff refers back to Claim One for his allegation against Griffie, stating that he "acted to suppress my attempts at receiving medical treatment." *Id.* at 8. In support of his official capacity claim against Griffie, Plaintiff alleges that "it is common for staffing to act at will and without constraint to deny persons of medical care." *Id.* at 9.

Plaintiff alleges that King, over a period of three months, denied him access to Ibuprofen "by allowing 10 days of meds for a tooth that would not be pulled for three months. He would then recharge on co-pay and give [another] 10 days of pain meds." *Id.* In support of his official capacity claim, Plaintiff alleges that King "carries out his duties in such a manner as is herein described so as to create profits, which in turn denies myself and all those under his care proper treatment." *Id.*

Regarding Moore, Plaintiff alleges it is customary for Moore to allow Griffie, King, and others to "act without restraint." *Id.* at 9-10. Plaintiff further alleges that Adams "does not act so as to prevent the violation of described rights, etc. Therefore facilitates said activities." *Id.* at 10. Although named as a defendant, Plaintiff makes no specific allegations against Stovall in Claim Two.

3

**Claim Three:** Plaintiff alleges that Griffie and King used excessive force against him on September 4, 2016. *Id.* at 11. Plaintiff specifically alleges that Griffie "physically forced [him] to Ad Seg without a hearing in a scenario which required no force." *Id.* Plaintiff alleges that King acted in collusion with Griffie, and customarily uses security staffing to enforce "his rules as medical in a physical manner." *Id.* Plaintiff alleges that Griffie and King "regularly commit[] these violations without restraint and [are] bolstered and empowered by Admin." *Id.* at 12. Plaintiff proceeds against both Defendants in their official and individual capacities for this claim. *Id.* at 11, 12. Plaintiff alleges "these practices have evolved under the tutelage of Ron Stovall becoming customary and accepted practice." *Id*. at 13. Plaintiff seeks punitive and compensatory damages. *Id.* at 14.

B. **Claims from Complaint in 4:16-cv-04104**

**Claim One:** Plaintiff alleges that on September 7, 2016, King stopped his medical treatment in retaliation for a grievance Plaintiff filed against King. *See* Complaint, *Duff v. King et al*, No. 4:16-cv-04104 (W.D. Ark. Oct. 28, 2016), ECF No. 1 at 4. Specifically, Plaintiff alleges that King retaliated against him by stopping his receipt of coal tar shampoo, Cetaphil medicated soap, and Cetaphil lotion used to treat his "Sorboric Dermatitis." *Id*. at 4-5. Plaintiff alleges it is customary for King to retaliate against inmates by refusing or stopping medical treatment. *Id.* at 5.

**Claim Two:** Plaintiff alleges King denied him medication on August 4, 2016, and September 7, 2016. *Id.* at 6. Plaintiff's allegations are mostly identical to those asserted in Claim Two of the first Complaint. Specifically, Plaintiff alleges that King would "attempt to refuse providing Ibuprofen altogether while knowing it to be 3 mos before Dentist would arrive." *Id*. at 7. Moreover, Plaintiff alleges that King would only provide ten days of Ibuprofen at a time and

4

charge a copay to get another ten days in order to gain a profit. *Id*. Plaintiff alleges that King customarily denied treatment in this manner. *Id.*

**Claim Three:** Plaintiff alleges that Moore, Adams, Landreth, and Stovall failed to protect him on August 4, 2016, and September 7, 2016. *Id*. at 8. Specifically, Plaintiff alleges that the aforementioned Defendants failed to protect him from King's denial of medical care and failed to protect him from being punished when he requested medical relief and assistance. *Id.* With regard to Moore, Plaintiff alleges that Moore "customarily turns a blind eye to requests for relief/assistance in the cited violations offenses. Breeding an environment of negligence and arbitrary authority." *Id*. Plaintiff further alleges that Landreth "refused to act to protect by responding to grievances" filed by Plaintiff. *Id*. at 9. Plaintiff alleges it is customary for Landreth to respond to grievances with implied threats of disciplinary action and ambiguous or false responses. *Id*.

Moreover, Plaintiff alleges that Adams refused to intercede on Plaintiff's behalf regarding retaliation and denial of medical care. *Id.* Plaintiff alleges that Adams "is aware of right and wrong personally and chose not to act to protect me. Therefore acting to col[l]ude with King and others in violating my rights." *Id.* at 10. Plaintiff further alleges that Stovall failed to protect him in his role as Sheriff because he did not ensure that violations did not occur or that those under his tutelage were competent. *Id*.

**Claim Four:** Plaintiff alleges King, Landreth, Stovall, and Moore were deliberately indifferent to him from August 4, 2016, to the date of his Complaint because they acted as cited earlier in his Complaint. *Id*. at 11. Plaintiff proceeds against all Defendants in both their official and individual capacities. *Id*. at 5, 7-14.

5

King filed his Motion for Summary Judgment on August 14, 2017. ECF No. 38. Stovall, Adams, Griffie, Landreth and Moore filed their Motion for Summary Judgment on August 14, 2017. ECF No. 42. Plaintiff filed his final Responses to the summary judgment motions on December 5, 2017. ECF Nos. 71, 72.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court must view the evidence and the inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The party moving for summary judgment bears the burden of proving the absence of any material factual disputes. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

Non-moving parties "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.  ANALYSIS

In the present case, King argues that he is entitled to summary judgment as to Plaintiff's claims against him because (1) he was not deliberately indifferent to Plaintiff's medical needs; (2) no policy or custom of Southern Health Partners, Inc. caused Plaintiff to suffer any unconstitutional harm; and (3) he did not retaliate against Plaintiff for filing grievances. ECF No. 40.

The Miller County Defendants argue that summary judgment is appropriate as to Plaintiff's claims against them because: (1) there is no proof of personal involvement by Stovall or Moore regarding Plaintiff's allegations of retaliation against Plaintiff by MCDC staff; (2) no proof that the Miller County Defendants failed to protect Plaintiff; (3) the Miller County Defendants were not involved in Plaintiff's medical care and were not deliberately indifferent to his medical needs; (4) there is no constitutional right to a grievance procedure; (5) verbal harassment or threats do not rise to the level of a constitutional violation; and (6) there is no basis for official capacity claims against Miller County.  ECF No. 43.  The Court will address each of the arguments raised by Defendants in turn.

### A.  Denial of Medical Care - Ibuprofen

First, King argues that he is entitled to summary judgment as to Plaintiff's "denial of medical care" claim because "the summary judgment evidence shows that each of Plaintiff's healthcare issues was timely addressed by . . . King and the other healthcare staff." ECF No. 40 at 9.  As previously mentioned, Plaintiff alleges that King denied him access to Ibuprofen for dental pain because he would only allow him to have Ibuprofen for ten days at a time.  After the ten days elapsed, Plaintiff alleges he was required to pay another copay in order to get more Ibuprofen.

7

Plaintiff first alleged this denial occurred during the months of June, July, and August 2016. In his second Complaint, Plaintiff alleges this occurred on August 4, 2016. Plaintiff alleges the ten day courses of Ibuprofen were intended to create profit through copays, because King knew that his tooth could not be pulled for three months.[2]

Plaintiff, therefore, does not allege that he was denied Ibuprofen. Instead, Plaintiff alleges he was required to be evaluated by a medical professional and pay a copay for that evaluation before more Ibuprofen would be prescribed to him.

Requiring a patient to pay for medical care does not state a claim of constitutional dimension. While jails must provide basic medical care to inmates, there is no requirement that jails provide the medical care free of cost. *See, e.g., Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3rd Cir. 1997) (deliberate-indifference standard does not guarantee prisoners right to be entirely free from cost considerations that figure in medical-care decisions made by most non-prisoners in society). Inmates may be constitutionally required to pay for their own medical expenses, if they can afford to do so. *Roberson v. Bradshaw*, 198 F.3d 645 (8th Cir. 1999); *cf. Jensen v. Klecker*, 648 F.2d 1179, 1183 (8th Cir. 1981) (no basis for due process claim where deductions from prisoner accounts were assessments for value received). As one district court aptly stated:

> Nothing in the Eighth Amendment requires the government to provide at no cost a commodity that would not be free outside the prison and that the inmate has the legal means to purchase. If a prison official withholds necessary medical care from an inmate with a serious medical need who cannot afford to pay, the official's action would violate the inmate's constitutional rights, but insisting that an inmate with sufficient funds pay for his own medical care is neither deliberate indifference nor punishment.

*Garcia v. Lappin*, No. 06-C-94-C, 2006 WL 897857, at *3 (W.D. Wis. Apr. 4, 2006).

---

[2] King submitted documentation that there had been issues with the dental equipment on the dentist's last visit to the facility. ECF 40-3 at 30.

Nor does the record reflect that Plaintiff was actually denied Ibuprofen for his dental pain. Plaintiff was booked into the MCDC on May 23, 2016. ECF No. 40-1 at 3; 40-2. Plaintiff submitted his first kiosk request concerning his dental pain on July 4, 2016, complaining of an abscessed tooth. ECF No. 40-3 at 7. Plaintiff was seen that same day and was prescribed an antibiotic, a 14-day course of Ibuprofen, and Anbesol (an oral anesthetic pain reliever). ECF No. 40-4 at 13. On July 21, 2016, Plaintiff submitted a kiosk request stating his tooth was still infected and causing pain. ECF No. 40-3 at 9. Plaintiff was started on an antibiotic and a 10-day course of Ibuprofen the next day. ECF No. 40-4 at 19. On August 4, 2016, Plaintiff submitted a kiosk request at 7:04 p.m., stating his "bad tooth was still giving him lots of pain." ECF No. 40-3 at 14. Plaintiff was advised that he could purchase Ibuprofen in the commissary, and that he was on the list to see the dentist. *Id*. Plaintiff was then given a 21-day course of Ibuprofen starting the next day on August 5, 2016. ECF No. 40-4 at 19.

Contrary to Plaintiff's allegations, the summary judgment evidence presented demonstrates that his medical needs were not ignored. Rather, Plaintiff's medical needs were addressed in a timely fashion. Accordingly, King is entitled to summary judgment as a matter of law on this claim.

**B. Retaliation for Filing Grievances**

Defendants next move for summary judgment as to the retaliation claims asserted against King and Griffie. "[A] claim that a plaintiff was penalized for the exercise of a specific constitutional right . . . is properly considered under the First Amendment." *Pate v. Peel*, 256 F. Supp. 2d 1326, 1336 (N.D. Fla. 2003) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999)). "To prevail on a § 1983 claim for retaliation in violation of the First Amendment, [a Plaintiff] must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from

continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

In general, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citation omitted). "Indeed, the retaliatory conduct does not itself need to be a constitutional violation in order to be actionable." *Id*. "Yet, there are some injuries so de minimis that they do not rise to the level of constitutional violation. 'It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise.'" *Evenstad v. Herberg*, 994 F. Supp. 2d 995, 1001 (D. Minn. 2014) (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). "The ordinary-firmness test is . . . designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment." *Santiago*, 707 F.3d at 992 (citation omitted).

Because nearly every otherwise routine administrative decision may potentially be viewed as a retaliatory act, courts recognize that "[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996). Further, courts have recognized that prison officials must have broad administrative authority. *Id.* For this reason, "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (not every response to a prisoner's exercise of a constitutional right is actionable).

As previously noted, Plaintiff makes a claim of retaliation against King and Griffie. The Court will address each claim separately.

### 1. Defendant King

Plaintiff alleges that King retaliated against him for filing Grievance # 1,169,585 by denying him his coal tar shampoo, Cetaphil medicated soap, and Cetaphil lotion for his seborrheic dermatitis and psoriasis. In Grievance # 1,169,585 Plaintiff made the following statement on September 4, 2016:

> forget grievance ref ending in 397. the tooth has fallen out, stopped hurting, and is not longer a problem. thank you king [f]or allowing me to waller in aginy for oer 100 days simply to c[h]arge me sevral times to do nothing or no[t]hing as is your usual choice of care. you king are a dispicable example of a human being.

ECF No. 40-3 at 32. King turned this grievance over to administration for the "blatant disrespect" in the statement. *Id.*

On September 7, 2016, Plaintiff submitted a kiosk request asking if his refills for shampoo, soap, and lotion had arrived. The response provided that Plaintiff's request was not a "sick call." ECF No. 40-3 at 33. Plaintiff submitted another kiosk request on September 11, 2016 at 9:53 p.m., stating King had retaliated by discontinuing Plaintiff's medication for his seborrheic dermatitis and psoriasis. Plaintiff asked to have his medication continued, to be moved off the unit, and for $100,000 in compensation. The request for money was denied. ECF No. 40-3 at 36. Plaintiff submitted another request at 10:00 p.m. and was told he had been placed on the list to see the doctor during his next visit. ECF No. 40-3 at 37. On September 17, 2016, Plaintiff submitted a kiosk request asking when the doctor was scheduled to visit. The response stated this was not a sick call. ECF No. 40-3 at 39. Plaintiff submitted another request on September 20, 2016, asking again for his shampoo, soap, and lotion. ECF No. 40-3 at 40.

Plaintiff was treated by Nurse Loni on September 21, 2016. He submitted two kiosk requests that same day, indicating he had received his soap, but got skin cleanser instead of lotion, and no shampoo. ECF No. 40-3 at 43-44. He submitted another request on the same topic on

11

September 25, 2016, and was seen the next day. On September 26, 2016, Plaintiff submitted a kiosk request stating "Thank you Mr. King." King replied, stating "You're welcome. Sorry for the confusion. 300 inmates can get hectic." ECF No. 40-3 at 46.

The record indicates Plaintiff was prescribed the shampoo on August 10, 2016. ECF No. 40-4 at 17. He was prescribed the Cetaphil soap and lotion on August 26, 2016. ECF No. 40-4 at 16. Plaintiff's own grievance documents indicate that he asked for refills for soap, lotion, and shampoo on September 11, 2016. Plaintiff was placed on the list to see the doctor. Plaintiff saw the doctor on September 21, 2016, and was prescribed the items. The grievance documents indicate there was some confusion in the delivery of the lotion and shampoo.

Based on his own kiosk requests, Plaintiff did not allege that King denied him these items. At most, Plaintiff has alleged that he was not able to see a medical care provider or receive refills of these items as quickly as he wished. The Court can find no summary judgment evidence of retaliation by King in these facts. A delay of several days in receiving soap, shampoo, and lotion for a minor skin condition is unlikely to deter a person of ordinary firmness from exercising his First Amendment rights. Indeed, Plaintiff was clearly not deterred from exercising his First Amendment rights based on the quantity and tenor of his grievances.[3] Plaintiff's claims against King for retaliation are not supported by the summary judgment evidence presented. Accordingly, King is entitled to judgment as a matter of law on this claim.

---

[3] Nor does this allegation state a claim for denial of medical care. The "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. Cnty. of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis." *Holden v. Hirner,* 663 F.3d 336, 342 (8th Cir. 2011) (internal quotations omitted). Plaintiff has submitted no verifiable medical evidence that the prognosis for his skin condition was adversely affected by the several day delay.

## 2. Defendant Griffie

Plaintiff alleges that, in response to Grievance # 1,169,585, Griffie retaliated against him by placing him in administrative segregation without a hearing, wrote a disciplinary charge against him, and punished him for using the grievance process to procure medical care. Plaintiff's grievance was written on September 4, 2016. Plaintiff's disciplinary report indicates he was charged with disrespectful behavior on September 4, 2016. ECF No. 44-1 at 54. The disciplinary charge was delivered to Plaintiff on September 7, 2016. Plaintiff was escorted to the "max end" pending a disciplinary hearing. Plaintiff entered a plea of guilty to the disciplinary charge and declined to appear at the disciplinary hearing. *Id*. at 56. Because Plaintiff plead guilty to the disciplinary charge, there can be no claim of retaliation for this incident. *See Santiago*, 707 F.3d at 993 ("[C]laims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule."). Accordingly, Griffie is entitled to summary judgment on this claim.

## C. Excessive Force

Plaintiff alleges Griffie and King used excessive force against him on September 4, 2016. Plaintiff alleges Griffie "physically forced him to Ad Seg" in the disciplinary incident discussed above. In addition, Plaintiff alleges King used security staffing to enforce his rules.

"When confronted with a claim of excessive force alleging a violation of the Eighth Amendment, the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Santiago v. Blair*, 707 F.3d at 990 (quoting *Hudson v. McMilliam*, 503 U.S. 1, 6-7 (1992)). "[E]very malicious push or shove does not amount to a deprivation of constitutional rights." *Hickey v. Reeder*, 12 F.3d 754, 757 (8th Cir. 1993). In considering an excessive force claim, relevant factors include the need for the application of force, the relationship between the need and the amount of force that was used,

the extent of the injury inflicted, the threat to the safety of the staff and inmates, and any attempt to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

The Court concludes that summary judgment on Plaintiff's excessive force claim is appropriate. Plaintiff's sole allegation of force is that Griffie "physically forced him" to administrative segregation for a disciplinary infraction to which he later plead guilty. By Plaintiff's own admission, therefore, the action of taking him to administrative segregation was done to maintain discipline. Plaintiff did not allege any specific action which could be interpreted as an application of excessive force, and he did not allege that he suffered any injury while being taken to administrative segregation. Likewise, the allegation that King relies upon MCDC security staff to maintain discipline and safety in the medical unit is not indicative of the use of excessive force. Accordingly, King and Griffie are both entitled to summary judgment on this claim.

**D. Failure to Protect**

Next, the Miller County Defendants move for summary judgment as to Plaintiff's claim that they were deliberately indifferent to his medical needs. As noted above, Plaintiff alleges that Moore, Adams, Landreth, and Stovall failed to protect him from King's denial of medical care and from being punished when he requested medical care. It is well established that prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners. *See Perkins v. Grimes*, 161 F.3d 1127, 1129 (8th Cir. 1998). This duty can, in some circumstances, be considered as a duty to protect against harm by other prison staff. *See e.g., Choa v. Ballista*, 772 F. Supp. 2d 337, 341-42 (D. Mass. 2011) (question of fact remained as to whether prison officials failed to protect a female inmate from repeated sexual battery by a prison guard). In either scenario, however, not "every injury suffered by [a] prisoner . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To prevail on his failure to protect claim, Plaintiff must satisfy a two prong test: (1) show he was "incarcerated under conditions posing a substantial risk of serious harm;" and (2) that prison officials were "deliberately indifferent [to his] health or safety." *See Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted). The first prong is an objective requirement to ensure the deprivation is a violation of a constitutional right. *Id*. The second, however, is subjective requiring Plaintiff show the official "both knew of and disregarded 'an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmers*, 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007). Negligence alone is insufficient to meet the second prong; instead, the official must "recklessly disregard a known, excessive risk of serious harm to the inmate." *Davis v. Oregon Cnty.*, 607 F.3d 543, 549 (8th Cir. 2010) (internal quotation marks and citation omitted). Furthermore, "[c]laims under the Eighth Amendment require a compensable injury to be greater than de minimis." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

After a careful review of the evidence, the Court concludes that Plaintiff fails to satisfy the first prong of the test. As discussed earlier in this opinion, there was no denial of medical care or use of excessive force by King against Plaintiff. Further, Plaintiff filed a grievance about his medical care which resulted in a disciplinary charge of disrespectful behavior. Plaintiff plead guilty to the charge. Plaintiff was, therefore, not punished or retaliated against for filing a grievance about his medical care but rather he was disciplined for disrespectful behavior. As such, Plaintiff was not incarcerated under conditions posing a substantial risk of serious harm based on either denial of medical care or "punishment." Accordingly, Defendants Moore, Adams, Landreth, and Stovall are each entitled to summary judgment on the failure to protect claim.

15

### E. Failure to Answer Grievances

Next, the Miller County Defendants argue that Landreth is entitled to summary judgment for allegedly failing to respond to grievances. Plaintiff alleges that Landreth failed to protect him by refusing to answer his grievances. The Miller County Defendants rightfully note that, even taking Plaintiff's allegations as true, Plaintiff has failed to identify a federal constitutional right he was deprived of because of the alleged inadequacy of the responses to his grievances.

The Court concludes that Landreth is entitled to summary judgment on this claim. "Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the . . . grievance procedure is not actionable under § 1983." *Ashann-Ra v. Va.*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000) (citations omitted); *see also Lombolt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (denial of grievances does not state a substantive constitutional claim); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) ("no constitutional right was violated by the defendants' failure, if any, to process all of the grievances [Plaintiff] submitted for consideration"); *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) (inmates have no constitutional right to grievance procedure); *Blagman v. White*, 112 F. Supp. 2d 534 (E.D. Va. 2000) (inmate has no constitutional entitlement to grievance procedure), *aff'd*, 3 Fed. App'x 23 (4th Cir. 2001).

### F. Verbal Harassment or Threats

The Miller County Defendants next move for summary judgment with regard to Plaintiff's claim that Landreth replied to grievances with "implied threats of disciplinary actions and ambiguous and or false responses." After a review of the summary judgment record, the Court notes that the only language that could remotely be interpreted as a threat in any of the grievance responses was a reminder to Plaintiff that the filing of false allegations in a grievance would result in disciplinary action. ECF No. 22. Regardless, "verbal threats do not constitute a constitutional

violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985). Accordingly, Landreth is entitled to summary judgment on this claim.

### G. Respondeat Superior

Plaintiff alleges at various points in his Complaints that Adams, Moore, and Stovall permitted their staff to "act without restraint" and engage in violations of Plaintiff's constitutional rights. A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper*, 130 F.3d at 1314 ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (citation omitted). In other words, Adams, Moore, and Stovall cannot be held liable merely because they hold supervisory positions at the MCDC.

Defendants are entitled to summary judgment on these claims. First, as discussed earlier in this opinion, Plaintiff failed to allege any constitutional violations. Second, Plaintiff did not allege specific facts of personal involvement in or direct responsibility for any of these alleged violations by these Defendants. Accordingly, the Court will enter summary judgment in favor of Defendants on these claims.

### H. Official Capacity Claims

Next, the Miller County Defendants move for summary judgment as to Plaintiff's various official capacity claims on the basis that he has failed to produce evidence that a county official

17

directed Defendants to not protect Plaintiff or a written policy directing Defendants to do so. Under Section 1983, a defendant may be sued in either his individual capacity, in his official capacity, or in both. In *Gorman v. Bartch*, the Eighth Circuit Court of Appeals discussed the distinction between individual and official capacity suits. 152 F.3d 907 (8th Cir. 1998). As explained by the court in *Gorman*:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.*, 502 U.S. at 24-27, 112 S.Ct. at 361-62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.*, 502 U.S. at 25-27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d at 914.

In support of his official capacity claims, Plaintiff makes such allegations as "it is customary for staffing" to place inmates in administration without a hearing; various supervisors "allow staffing to act without constraint;" staffing is allowed to act "without restraint;" "these practices have evolved under the tutelage" of a supervisor to become "customary and accepted practice;" and supervisors "turned a blind eye" or "failed to hinder" violations. Such vague and conclusory allegations cannot support an official capacity claim. *See Nix v. Norman,* 879 F.2d 429, 433 (8th Cir. 1989). ("To establish liability in an official-capacity suit under section 1983, a plaintiff must show either that the official named in the suit took an action pursuant to an unconstitutional governmental policy or custom . . . or that he or she possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner."); *Arnold v. Corizon, Inc.*, No. 1:15CV62, 2015 WL 4206307, at *2 (E.D. Mo. July 10, 2015) (conclusory

claims that defendants acted according to some unspecified policies or customs are not enough to state official capacity claims). Accordingly, Plaintiff has failed to allege official capacity claims against either Miller County or Southern Health Partners, Inc. and thus summary judgment should be granted.

## IV. CONCLUSION

For the reasons explained above, the Court finds that Defendants' Motions for Summary Judgment (ECF Nos. 38, 42) should be and hereby are **GRANTED**. Accordingly, Plaintiff's claims are **DISMISSED WITH PREJUDICE**. A judgment of even date consistent with this Order will be issued.

**IT IS SO ORDERED**, this 9th day of March, 2018.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge